UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JUDGE HOLWELL

10 CV 7388

AMERICAN CIVIL LIBERTIES UNION;

Plaintiff,

v.

INDIAN HEALTH SERVICES;

Defendant.

**COMPLAINT FOR
INJUNCTIVE RELIEF**

Civil Action No.



RECEIVED
SEP 27 2010
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT FOR INJUNCTIVE RELIEF

### Preliminary Statement

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, seeking, principally, the processing and release of agency records requested by Plaintiff American Civil Liberties Union ("ACLU") from Defendant Indian Health Services.  Plaintiff seeks documents related to Defendant's failure to provide adequate obstetrical and other medical care to residents of the Cheyenne River Sioux Reservation ("Reservation") in South Dakota.

2.  Indian Health Services ("IHS") is the federal agency charged with meeting the United States government's treaty obligations to provide health care to American Indians and Alaska Natives.  Despite this legal obligation, obstetrical care has been unavailable at any IHS facility on the Reservation since 2001 and plans for a new birthing unit have languished for years.  As a result, most pregnant women who would otherwise be eligible for direct care in an IHS facility must travel approximately ninety miles to St. Mary's

Healthcare Center ("St. Mary's"), in Pierre, South Dakota, for labor and delivery. Moreover, some of these women report that they are being told they must forgo natural labor and delivery, and instead take medication to induce labor -- with little or no notice, explanation, or counseling, and at a time selected exclusively by their doctor (sometimes even before their due date).

3.   Coercing women to take medication to induce labor necessarily violates their fundamental rights to privacy and bodily integrity.  Such a practice raises serious concerns in this context given that this country has a long and unfortunate history of violating Indian women's reproductive rights and autonomy.  Abusive practices, such as forced and involuntary sterilizations, were endemic in government-sponsored Indian health services as recently as the 1970's.  These reports from the Cheyenne River Sioux -- that, effectively left with no alternative source of medical care, women are being coerced into taking medication to induce labor -- are jarringly reminiscent of such past abuses.

4.   Accordingly, Plaintiff sent two FOIA requests to Defendant seeking information concerning the provision of reproductive health care on the Reservation: (1) regarding the construction of the proposed birthing unit and hospital that would create the promise of onsite medical care for residents of the Reservation; and (2) regarding the practice of inducing labor at St. Mary's.

5.   Plaintiff ACLU is entitled to the release of the documents sought and to a limitation and/or waiver of fees and has exhausted all administrative appeals.  However, almost one year after they were filed, IHS continues to refuse to comply with Plaintiff's requests, and has far exceeded the statutory, and regulatory, deadline for responding to FOIA requests.

**Jurisdiction and Venue**

6.     This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(4)(A)(vii).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 501 U.S.C. §§ 701-706.  Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

7.     Plaintiff American Civil Liberties Union is a nationwide, non-profit, non-partisan organization with over 500,000 members dedicated to the constitutional principles of liberty and equality.

8.     IHS is a Department of the Executive Branch of the United States Government.  Defendant IHS is an agency within the meaning of 5 U.S.C. § 552(f)(1).

**Obstetrical Care on the Cheyenne River Sioux Reservation**

9.     The Cheyenne River Sioux Reservation is the fourth largest reservation in the United States, with a population of about 10,000 people, most of them tribal members.

10.     Almost all of Ziebach County, S.D., one of the poorest counties in the United States, is located within the Reservation's borders.

11.     Although there is a small medical facility on the Reservation in the town of Eagle Butte, for anything other than modest medical treatment, tribal members and residents must travel to Pierre (approximately 90 miles), Gettysburg (approximately 80 miles), Rapid City (approximately 180 miles), or Bismark, N.D. (approximately 180 miles).

12.     In 2001, the only birthing unit on the entire reservation, which had been located at the Eagle Butte facility, closed.  The nearest facilities that provide obstetrical services pursuant to an IHS contract are in Pierre.  Because roads are poor, it can take over two hours to get to these hospitals.

13.     On information and belief, the Cheyenne River Sioux Reservation is the only reservation in South Dakota that is not equipped to handle uncomplicated births.

14.     Studies show that the availability of rural maternity units – even those that lack a surgical unit and can only handle uncomplicated births – results in better pregnancy outcomes than when rural women are forced to seek maternity care in distant urban areas.

15.     In 2002, IHS approved plans for a new medical facility in Eagle Butte.  In 2003, IHS announced that a birthing unit would be built as part of that new facility.  By 2009, construction of the new facility in Eagle Butte had not progressed beyond the earliest stages.  However, in 2009, Congress appropriated $500 million in the American Recovery and Reinvestment Act of 2009 for improvements in Indian health, of which IHS allocated $111 million to finishing the new facility in Eagle Butte.

16.     According to an August 2009 IHS Project Status Update, the current expected completion date for the hospital is not until December 2012.

### Obstetrical Care at St. Mary's Hospital

17.     Because the IHS facility at Eagle Butte is not equipped to handle labor and delivery, IHS has contracted with a single obstetrician at St. Mary's Hospital in Pierre, S.D. (approximately ninety miles away) to provide obstetrical care to tribal members.  The next closest IHS physician is twice as far away, in Rapid City, S.D. (approximately

180 miles away). For this reason, virtually all the women on the Reservation go to St. Mary's for labor and delivery.

18.    However, some women report that they are coerced into scheduling an induction and forgoing spontaneous labor and delivery at St. Mary's. These women fear that if they refuse to be induced, IHS, which they rely upon for health care, will refuse to subsidize the cost of labor and delivery.

19.    These women also report that they do not receive any counseling regarding the risks and benefits of inducing labor and delivery and forgoing spontaneous labor and delivery.

20.    Induction carries some risks to the pregnant woman and her infant, including higher cesarean section rates, and are contraindicated for some women (e.g., where there is a transverse fetal position, umbilical cord prolapse, active genital herpes infection, placenta previa, and women who have had fibroids removed).

21.    While labor is sometimes induced for logistical reasons, such as a woman's distance from the hospital, there is no medical group or organization that recommends mandatory inductions for all rural women, regardless of their preference or circumstances.

22.    For example, the American College of Obstetricians and Gynecologists' ("ACOG") August 2009 clinical guidelines regarding inductions state that a patient should always be counseled regarding the indications for induction and the possible need for repeat induction or cesarean delivery as a result.

23.    ACOG also suggests allowing at least 12-18 hours of latent labor before elective induction, in order to reduce the risk of cesarean delivery.

24.     The need for induction also depends on whether it is a woman's first pregnancy, as labor typically takes longer for these women and it is therefore less likely that they will deliver before reaching a hospital.

25.     The policy or practice of coercing inductions has a devastating effect on women and their families.  For example, not only do women of the Cheyenne River Sioux have to travel far outside their community in order to give birth, but some women are also induced and forced to deliver before their families are able to join them at the hospital – even when there are no medical reasons to do so.

26.     Moreover, because they are beholden to IHS for medical care, these women feel powerless to refuse to be induced on their physician's terms, and thus their fundamental rights to privacy and bodily integrity are violated.  That the women of the Cheyenne River Sioux live in a rural area and must rely on IHS for health care does not give the federal government the right to deprive Native women of the ability to make an informed and autonomous decision about their medical care.

**Plaintiff's FOIA Requests**

27.     On November 24, 2009, Plaintiff filed a FOIA request ("Birthing Unit Request") with IHS Headquarters via certified mail seeking records related to the plans to build a birthing unit at the new medical facility in Eagle Butte.  Ex. A ("Birthing Unit Request").  This request was received by IHS Headquarters on November 27, 2009.

28.     In the request, Plaintiff also sought a limitation of fees as a news media requester pursuant to 45 C.F.R. § 5.41(b) and a further waiver or reduction of fees pursuant to 45 C.F.R. § 5.45 because disclosure of the information requested is likely to contribute significantly to public understanding of the operations or activities of the

federal government and is not sought for Plaintiff's commercial use.  Ex. A ("Birthing Unit Request").

29.     On November 24, 2009, Plaintiff also filed a FOIA request ("St. Mary's Request") with the IHS Regional FOIA Office in Aberdeen, S.D., via certified mail seeking, *inter alia*, records related to IHS policies regarding induction of labor at St. Mary's.  Ex. B ("St. Mary's Request").  This request was received by the IHS Regional FOIA office on November 30, 2009.

30.     In the request, Plaintiff also sought a limitation of fees as a news media requester pursuant to 45 C.F.R. § 5.41(b) and a further waiver or reduction of fees pursuant to 45 C.F.R. § 5.45 because disclosure of the information requested is likely to contribute significantly to public understanding of the operations or activities of the federal government and is not sought for Plaintiff's commercial use.  *Id.*

31.     In a letter dated December 17, 2009, the IHS Regional FOIA office informed Plaintiff that it was forwarding the St. Mary's Request to IHS headquarters. Ex. C (Dec. 17, 2009 Letter from IHS to ACLU).

### Defendant Agency's Responses

32.     Plaintiff received no response from Defendant to its requests until nearly three months after the requests were filed.

33.     In a letter to Plaintiff dated February 17, 2010, IHS stated it was "acknowledging" Plaintiff's "request."  Ex. D (Feb. 17, 2010 Letter from IHS to ACLU). The letter also appeared to deny Plaintiff's requests for a limitation of fees as a news media requester pursuant to 45 C.F.R. § 5.41(b), although it did not do so explicitly, by placing Plaintiff in the "other" requester category.  *Id.*

34.     The letter failed to specify whether it was "acknowledging" receipt of both

of the requests or simply one of them (and, if so, which one).  The letter also failed to

specify the status of either of Plaintiff's requests; to specify the reasons why Plaintiff's

requests for news media requester status were implicitly denied; or to specify how

Plaintiff might appeal the implicit denial of its requests for news media requester status.

Finally, the letter failed to say anything at all about Plaintiff's requests for a further

waiver and reduction of fees pursuant to 45 C.F.R. § 5.45.  *Id.*

### Plaintiff's Administrative Appeal

35.     When an agency fails to *decide* a FOIA request within the statutory

deadline (twenty-calendar days), the request is deemed constructively denied.  *See* 45

C.F.R. § 5.35(a).  At this time, a requester is also deemed to have constructively

exhausted the administrative appeals process and is entitled to seek immediate judicial

review of the agency's non-response.  *See* 5 U.S.C. § 552(a)(6)(C).

36.     Because Defendant failed to decide Plaintiff's requests within the statutory

deadline – or, indeed, to give any indication as to an estimated timeline for deciding the

requests – Plaintiff was entitled to immediate judicial review.  However, in an effort to

avoid litigation, Plaintiff filed an administrative appeal of Defendant's constructive

denial of its requests on March 3, 2010.  Ex. E (Administrative Appeal).  Plaintiff's

administrative appeal was received by the agency on March 5, 2010.  Ex. F (Mar. 5, 2010

Letter from IHS to ACLU).

37.     To date, Plaintiff has received no further communication from Defendant

in regards to either the original requests or the administrative appeal.  Nearly a year has

passed since Plaintiff initially filed its requests, yet Defendant has not disclosed any

record in response to Plaintiff's requests nor stated which records, if any, it intends to disclose.

38.     Judicial review is proper in light of Defendant's effective denial both of Plaintiff's original requests and Plaintiff's administrative appeal. *See, e.g.*, 5 U.S.C. § 552(a)(6)(C); 45 C.F.R. § 5.35(a).

39.     Defendant is improperly withholding the records sought by Plaintiff's requests.

### Plaintiff's Entitlement to a Waiver or Limitation of Processing Fees

40.     Plaintiff ACLU is entitled to a waiver of document search and review fees pursuant to 45 C.F.R. § 5.41 because it qualifies as a "representative of the news media."

41.     Plaintiff meets the definition of a "representative of the news media" because it is an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience. *See* 45 C.F.R. § 5.5; *see also* Exs. A ("Birthing Unit Request"), B ("St. Mary's Request"), E (Administrative Appeal).

42.     Plaintiff is also entitled to a waiver or limitation of duplication fees because disclosure of the requested information is (1) in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and (2) not primarily in the commercial interest of the requester. *See* 5 U.S.C. § 552(a)(4)(A)(iii); 45 C.F.R. § 5.45(b); *see also* Exs. A ("Birthing Unit Request"), B ("St. Mary's Request"), E (Administrative Appeal).

43.     Plaintiff is also entitled to a waiver of search and/or duplication fees because Defendant IHS failed to comply with the statutory time limits for deciding Plaintiff's requests.  *See* 5 U.S.C § 552(a)(4)(A)(viii).

44.     As alleged above, the Cheyenne River Sioux Reservation, which spans over 4,000 square miles, has lacked any medical facility that can handle even uncomplicated births for almost a decade.  This is so even though plans were announced for a new birthing unit in Eagle Butte in 2003.  Moreover, as set forth above, women from the Reservation report that, at the nearest hospital that does handle births – St. Mary's, which is ninety miles away – pregnant Indian women are coerced into scheduling an induction date, and forgoing natural birth; if they refuse, they fear IHS, their only source of affordable health care, will not cover the cost of labor and delivery.

45.     Thus, the records sought in the instant requests pertain directly to the operations and activities of the federal government.  For example, Plaintiff seeks information relating to the restoration of critical health care services and to the provision of medically appropriate obstetrical care to a rural and underserved population. Moreover, the information to be learned from the requested documents is not already public knowledge.

46.     In addition, Plaintiff does not seek the requested information for commercial reasons.  The ACLU summarizes, explains, and disseminates the information it gathers through FOIA at no cost to the public.

**Causes of Action**

47.     Defendant's failure to timely respond to Plaintiff's requests violates the FOIA, 5 U.S.C. § 552(a)(6)(A), and Defendant's corresponding regulations.

48.     Defendant's failure to make a reasonable effort to search for records responsive to the Plaintiff's requests violates the FOIA, 5 U.S.C. § 552(a)(3)(C), and Defendant's corresponding regulations.

49.     Defendant's failure to grant Plaintiff's Requests for a waiver of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and Defendant's corresponding regulations.

50.     Defendant's failure to grant Plaintiff's requests for a limitation of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and Defendant's corresponding regulations.

## **Requested Relief**

WHEREFORE, Plaintiffs pray that this Court:

1.  Order Defendant immediately to process all requested records;

2.  Order Defendant to conduct a thorough search for all responsive records;

3.  Order Defendant to promptly disclose the requested records in their entirety, and make copies available to Plaintiff;

4.  Enjoin Defendant from charging Plaintiff fees for the processing of their requests;

5.  Award Plaintiff costs and reasonable attorneys' fees incurred in this action, under 5 U.S.C. § 552(a)(4)(E); and

6.  Grant such other relief as the Court may deem just and proper.

DATED:  September 27, 2010

Respectfully submitted,

ALEXA KOLBI-MOLINAS (AK-1112)
BRIGITTE AMIRI (BA-8497)

American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-549-2633
Fax: 212-549-2652

ROBERT DOODY*
American Civil Liberties Union of South
Dakota
401 E. 8th St., Suite 226
Sioux Falls, SD 57103
Phone: 605-332-2508
Fax:  605-332-5648
* *Admission pro hac vice pending*

**Exhibit A**

LEGAL DEPARTMENT
REPRODUCTIVE
FREEDOM PROJECT



ALEXA KOLBI MOLINAS
*STAFF ATTORNEY*
T/212.519.7845

November 24, 2009

By Certified Mail,
Return Receipt Requested

Department of Health and Human Services
Indian Health Service
801 Thompson Avenue, TMP 450
Rockville, MD 20852

Dear Sir or Madam:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
REPRODUCTIVE
FREEDOM PROJECT
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2633
F/212.549.2652
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
*PRESIDENT*

ANTHONY D. ROMERO
*EXECUTIVE DIRECTOR*

RICHARD ZACKS
*TREASURER*

  This letter constitutes a request by the American Civil Liberties Union ("ACLU") for production of records under the Freedom of Information Act, 5 U.S.C. § 552, and the implementing regulations of the Department of Health and Human Services, 45 C.F.R. Pt. 5.

  Since 2001, obstetrical services have been unavailable at any Indian Health Services ("IHS") facility on the Cheyenne River Sioux Reservation. As a result, most pregnant women who would otherwise be eligible for direct care in an IHS facility must travel approximately 90 miles to St. Mary's Healthcare Center ("St. Mary's"), in Pierre, S.D., for labor and delivery. In 2003, Dr. Grim, then-Director of IHS, announced that a Birthing Unit would be built as part of a new state of the art hospital planned for the Cheyenne River Sioux in Eagle Butte. Although construction on the hospital has yet to be completed, in May 2009, IHS allocated an additional $111 million of stimulus money for the new hospital in Eagle Butte.[1] This request seeks information related to plans to include a Birthing Unit at the new Eagle Butte facility.

### Definitions

  For purposes of this request, the term "<u>materials</u>" includes but is not limited to any and all objects, writings, drawings, graphs, charts, tables, electronic or computerized data compilations, budgets, accountings, balance sheets or other financial statements, invoices, receipts, minutes, emails, electronic or computerized documents, photographs, audiotapes, videotapes, transcripts, drafts, correspondence, notes, notes of oral communications, and non-identical copies, including but not limited to copies with notations.

---

[1] Congress allocated a total of $227 million in stimulus funds to allow the completion of two health facilities from the construction priority list. Of that money, IHS allocated $111 million to the Eagle Butte facility.

<u>Requests</u>

Please provide the following materials dated from 2001 to the present:

1. Any and all materials related to the provision of labor and delivery services to women of and on the Cheyenne River Sioux Reservation.

2. Any and all materials related to the current status of plans to build a Birthing Unit, or other facility to provide labor and delivery services, as part of the new hospital at Eagle Butte and/or elsewhere on the Cheyenne River Sioux Reservation.

We request that you produce responsive materials in their entirety, including all attachments, appendices, enclosures and/or exhibits. However, to the extent that a response to this request would require IHS to provide multiple copies of identical material, the request is limited so that only one copy of the identical material is requested.

In the event you determine that materials contain information that falls within the statutory exemptions to mandatory disclosure, we request that such information be reviewed for possible discretionary disclosure. *See Chrysler Corp. v. Brown,* 441 U.S. 281, 293 (1979). We also request that, in accordance with 5 U.S.C. § 552(b), any and all reasonably segregable portions of otherwise exempt materials be produced. To the extent the request is denied, we expect to receive notice in writing, including a description of the information withheld, the reasons for denial, and any exemptions relied upon. *See* 5 C.F.R. § 5.33.

If the duplication fees associated with responding to this request exceed $100, we request the fees be waived pursuant to 45 C.F.R. §§ 5.41, 5.45. For the reasons discussed below, the ACLU qualifies as a "representative of the news media," and should be charged only for duplication fees beyond the first 100 pages of duplication; the ACLU should not be charged fees for search and review associated with the request. *See* 45 C.F.R. § 5.41. We further request a waiver or reduction of any incurred duplication fees on the grounds that disclosure is (1) in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and (2) not primarily in the commercial interest of the requester. 45 C.F.R. § 5.45(a). Disclosure in this case meets both of these tests; and a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti,* 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'").

The applicable IHS FOIA regulations provide the following factors to consider in determining whether disclosure is in the public interest: (a) how

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

the records pertain to the operations or activities of the federal government; (b) whether disclosure of the records reveals any meaningful information about government operations or activities; whether one can learn from these records anything that is not already public knowledge; (c) whether the disclosure advances the understanding of the general public as distinguished from a narrow segment of interested persons; and (d) whether the contribution to public understanding will be significant and substantially greater as a result of disclosure. 45 C.F.R. § 5.45(b).

Disclosure pursuant to this request is in the public interest. First, the records pertain directly to the operations and activities of the federal government and the restoration of critical health care services to a rural and underserved population. Second, the information to be learned from the requested documents, which is not already public knowledge, is critical to ensuring public accountability for the use of stimulus money.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Third, because the ACLU qualifies as a "representative of the news media," as defined by FOIA, IHS should find that the information requested is "likely to [be] disseminated to the public." *See* 45 C.F.R. § 5.45(b)(3). The ACLU meets the definition of a representative of the news media because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience." *National Sec. Archive v. Department of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). *See also* 45 C.F.R. § 5.5 (defining representative of the media as a "publisher[ ] of periodicals" that "distribute[s]" its "products to the general public" and an entity that "disseminate[s] news through other media (e.g., electronic dissemination of text)"). The ACLU regularly gathers information on issues of public significance; uses its editorial skills to turn that information into distinct publications such as reports, newsletters, right-to-know pamphlets, fact sheets, and other educational materials; and distributes those materials to the general public through various channels, such as its heavily subscribed Web site (www.aclu.org), and newsletter sent to its more than 400,000 members, as well as an electronic newsletter, which is distributed to subscribers by e-mail. The ACLU is therefore a "news media entity." *Cf. Electronic Privacy Information Ctr. v. Department of Defense*, 241 F.Supp.2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the media" for purposes of FOIA).

Fourth, allowing a fee waiver in this instance is in the public interest: Disclosure will contribute to the public good in a significant way because the requested records are all materials related to the use of federal stimulus funds to improve health care facilities in an area IHS has already designated as a priority. *See* Indian Health Service 30-Day Report to Congress, General Plan for Expenditure of Recovery Act Funds at http://www.hhs.gov/recovery/reports/ihsreport.html. "[W]hat could be more important to the public's understanding of [agency] operations" than

understanding how $111 million taxpayer dollars is going to be used by that agency. *Judicial Watch*, 326 F.3d at 1313.

Finally, disclosure is not in the ACLU's commercial interest, defined as "interests relating to business, trade and profit." 45 C.F.R. 5.45(c)(1).  The ACLU is a "non-profit, non-partisan, public interest organization." *See Judicial Watch*, 326 F.3d at 1310.  The purpose of the request is to monitor and vindicate legal rights; it is unrelated to business, trade, or profit.

Because the ACLU meets the test for both representatives of the news media and fee waivers, fees associated with responding to FOIA requests are regularly waived for the ACLU.

In the event that you decide not to waive fees for this request please provide me with prior notice so that we can discuss arrangements.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

We look forward to a determination on this request from you within 10 (ten) working days pursuant to 45 C.F.R. § 5.35.  Thank you for your prompt attention to this request.  Please call me at (212) 519-7845 if you have any questions or wish to obtain further information about the nature of the documents in which we are interested.  The records should be sent to Alexa Kolbi-Molinas, ACLU Foundation, 125 Broad Street, 18th Floor, New York, NY 10004.

Sincerely,

Alexa Kolbi-Molinas

**Exhibit B**

LEGAL DEPARTMENT
REPRODUCTIVE
FREEDOM PROJECT



ALEXA KOLBI MOLINAS
*STAFF ATTORNEY*
T/212.519.7845

November 24, 2009

<u>By Certified Mail,</u>
<u>Return Receipt Requested</u>

Attn: Ted Troseth, Area FOIA Coordinator
Department of Health & Human Services
Indian Health Service
Federal Building, Rm. 309
115 Fourth Avenue, SE
Aberdeen, SD 57401

Dear Mr. Troseth:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
REPRODUCTIVE
FREEDOM PROJECT
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2633
F/212.549.2652
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
*PRESIDENT*

ANTHONY D. ROMERO
*EXECUTIVE DIRECTOR*

RICHARD ZACKS
*TREASURER*

    This letter constitutes a request from the American Civil Liberties Union ("ACLU") for production of records under the Freedom of Information Act, 5 U.S.C. § 552, and the implementing regulations of the Department of Health and Human Services, 45 C.F.R. Pt. 5.

    Since 2001, obstetrical services have been unavailable at any Indian Health Services ("IHS") facility on the Cheyenne River Sioux Reservation. As a result, most pregnant women who would otherwise be eligible for direct care in an IHS facility must travel approximately 90 miles to St. Mary's Healthcare Center ("St. Mary's"), in Pierre, S.D., for labor and delivery. This request seeks information related to IHS' policies regarding reimbursement for labor and delivery services at St. Mary's or other facilities that serve the Cheyenne River Sioux Reservation and IHS' policies regarding the induction of labor at St. Mary's or other facilities that serve the Cheyenne River Sioux Reservation. This request also seeks information related to the treatment of ectopic pregnancies and miscarriages at St. Mary's or other facilities that serve the Cheyenne River Sioux Reservation.

<u>Definitions</u>

    For purposes of this request, the term "materials" includes but is not limited to any and all objects, writings, drawings, graphs, charts, tables, electronic or computerized data compilations, budgets, accountings, balance sheets or other financial statements, invoices, receipts, minutes, emails, electronic or computerized documents, photographs, audiotapes, videotapes, transcripts, drafts, correspondence, notes, notes of oral communications, and non-identical copies, including but not limited to copies with notations.

<u>Requests</u>

Please provide the following materials dated from 2001 to the present[1]:

1.  Any and all materials, not including individual medical records, related to the provision of birthing services for women on the Cheyenne River Sioux Reservation, or members of the Cheyenne River Sioux tribe.

2.  Any and all materials, not including individual medical records, related to policies for reimbursement for labor and delivery costs at St. Mary's or other facilities that serve the Cheyenne River Sioux Reservation.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

3.  Any and all materials, not including individual medical records, related to the denial of reimbursement for labor and delivery costs at St. Mary's or other facilities that serve the Cheyenne River Sioux Reservation.

4.  Any and all materials related to induction of labor, including but not limited to any procedures, policies, directives, practices, guidance or guidelines concerning induction of labor due to pregnant patient's distance from hospital, at any IHS facility and facility where Contract Health Services provide obstetrical services, including St. Mary's or other facilities that serve the Cheyenne River Sioux Reservation.

5.  Any and all materials, not including individual medical records, related to the treatment of ectopic pregnancies and miscarriages at any IHS facility and facility where Contract Health Services provide reimbursement for obstetrical services, including St. Mary's or other facilities that serve the Cheyenne River Sioux Reservation.

We request that you produce responsive materials in their entirety, including all attachments, appendices, enclosures and/or exhibits. However, to the extent that a response to this request would require IHS to provide multiple copies of identical material, the request is limited so that only one copy of the identical material is requested.

In the event you determine that materials contain information that falls within the statutory exemptions to mandatory disclosure, we request that such

---

[1] To the extent that any of these records contain information that is protected by state and/or federal privacy laws, we request that you redact any names and other protected information, provide the reasons for withholding any protected information, and release all portions of the record which contain non-protected information.

information be reviewed for possible discretionary disclosure. *See Chrysler Corp. v. Brown,* 441 U.S. 281, 293 (1979). We also request that, in accordance with 5 U.S.C. § 552(b), any and all reasonably segregable portions of otherwise exempt materials be produced. To the extent the request is denied, we expect to receive notice in writing, including a description of the information withheld, the reasons for denial, and any exemptions relied upon. *See* 5 C.F.R. §§ 5.33.

If the duplication fees associated with responding to this request exceed $100, we request the fees be waived pursuant to 45 C.F.R. § 5.41, 5.45. For the reasons discussed below, the ACLU qualifies as a "representative of the news media," and should be charged only for duplication fees beyond the first 100 pages of duplication; the ACLU should not be charged fees for search and review associated with the request. *See* 45 C.F.R. § 5.41. We further request a waiver or reduction of any incurred duplication fees on the grounds that disclosure is (1) in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and (2) not primarily in the commercial interest of the requester. 45 C.F.R. § 5.45(a). Disclosure in this case meets both of these tests; and a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti,* 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'").

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The applicable IHS FOIA regulations provide the following factors to consider in determining whether disclosure is in the public interest: (a) how the records pertain to the operations or activities of the federal government; (b) whether disclosure of the records reveals any meaningful information about government operations or activities; whether one can learn from these records anything that is not already public knowledge; (c) whether the disclosure advances the understanding of the general public as distinguished from a narrow segment of interested persons; and (d) whether the contribution to public understanding will be significant and substantially greater as a result of disclosure. 45 C.F.R. § 5.45(b).

Disclosure pursuant to this request is in the public interest. First, the records pertain directly to the operations and activities of the federal government; namely, the obligation of the federal government to provide medically appropriate obstetrical care to rural, Indian communities. Second, the information to be learned from the requested documents is not already public knowledge.

Third, because the ACLU qualifies as a "representative of the news media" as defined by FOIA, IHS should find that the information requested is "likely to [be] disseminated to the public." *See* 45 C.F.R. § 5.45(b)(3). The ACLU meets the definition of a representative of the news media because it is "an entity that gathers information of potential interest to a segment of the public,

uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience." *National Sec. Archive v. Department of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). *See also* 45 C.F.R. § 5.5 (defining representative of the media as a "publisher[ ] of periodicals" that "distribute[s]" its "products to the general public" and an entity that "disseminate[s] news through other media (e.g., electronic dissemination of text)"). The ACLU regularly gathers information on issues of public significance; uses its editorial skills to turn that information into distinct publications such as reports, newsletters, right-to-know pamphlets, fact sheets, and other educational materials; and distributes those materials to the general public through various channels, such as its heavily subscribed Web site (www.aclu.org), and newsletter sent to its more than 400,000 members, as well as an electronic newsletter, which is distributed to subscribers by e-mail. The ACLU is therefore a "news media entity." *Cf. Electronic Privacy Information Ctr. v. Department of Defense*, 241 F.Supp.2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the media" for purposes of FOIA).

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Fourth, allowing fee waivers is in the public interest: Disclosure will contribute to the public good in a significant way because the requested records are all materials related to the provision of critical health care services to rural, underserved Indian communities. *See Judicial Watch*, 326 F.3d at 1313.

Finally, disclosure is not in the ACLU's commercial interest, defined as "interests relating to business, trade and profit." 45 C.F.R. 5.45(c)(1). The ACLU is a "non-profit, non-partisan, public interest organization." *See Judicial Watch*, 326 F.3d at 1310. The purpose of the request is to monitor and vindicate legal rights; it is unrelated to business, trade, or profit.

Because the ACLU meets the test for both representatives of the news media and fee waivers, fees associated with responding to FOIA requests are regularly waived for the ACLU.

In the event that you decide not to waive fees for this request please provide me with prior notice so that we can discuss arrangements.

We look forward to a determination on this request from you within 10 (ten) working days pursuant to 45 C.F.R. § 5.35. Thank you for your prompt attention to this request. Please call me at (212) 519-7845 if you have any questions or wish to obtain further information about the nature of the documents in which we are interested. The records should be sent to Alexa Kolbi-Molinas, ACLU Foundation, 125 Broad Street, 18th Floor, New York, NY 10004.

Sincerely,

Alexa Kolbi-Molinas

**Exhibit C**

INDIAN HEALTH SERVICE                          Office of Resource Mgmt
Ted Troseth, RHIA                              Health Information Mgmt
                                               Federal Building, Rm 309
                                               115 4th Avenue, SE,
                                               Aberdeen, S.D. 57401


December 16, 2009

Dear. Alexa:

I am responding to your request of November 24, 2009 for information on Labor and
Delivery services on the Cheyenne River Sioux Reservation.

Your request falls under the Freedom of Information Act (FOIA).  As the FOIA
Coordinator for the Aberdeen Area Indian Health Service, it was forwarded to me for
response and processing.

I am forwarding your request to our Indian Health Service (IHS) Freedom of Information
Act (FOIA) Officer, at the IHS Headquarters in Rockville, Maryland.  The Agency FOIA
Officer is the only person who has the authority to release or deny requests for this
agency.

Pursuant to Department Regulations, charges for duplication search time and review of
the documents may be made if applicable.

If you have any questions or concerns please do not hesitate to call the FOIA
Headquarters Office at (301) 443-6177.

Sincerely,

Ted Troseth, RHIA
AAO/HIM Consultant
Freedom of Information Act Coordinator

**Exhibit D**

 **INDIAN HEALTH SERVICE**   Department of Health and Human Services

Public Health Service
Rockville MD 20852

Feb 17 2010

Dear:   Alexa Kolbi- Molinas                         FOIA Case No.: 10-033

This is a response to acknowledge receipt of your Freedom of Information Act (FOIA) request by the
FOIA Office of the Indian Health Service (IHS). Please note that this letter serves as the 20-day
acknowledgment response required under the FOIA, 45 CFR 5.35. For information regarding your
request please contact:

> Indian Health Service
> Freedom of Information Act, Staff
> Division of Regulatory Affairs, OMS
> 801 Thompson Ave. (TMP 450)
> Rockville, MD 20852          Tel: (301) 443-1116

You can contact the FOIA staff for status of your FOIA request; other offices of the IHS will not have
information relating to the current status of your request. Please reference the FOIA case number
indicated above in any correspondence.

Pursuant to Departmental Regulations, 45 CFR Part 5, Subpart D, charges for duplication, search and
review time will be made if applicable. A table of the current charges appears at the bottom of this
letter. You have been classified as follows:

      ‾      Category I - Commercial Use Requester
             Category II - Media/Educational/Noncommercial Scientific Requesters
      ✓      Category III - Other Requesters

If you have been classified as a Category I requester, you will be charged for duplication, editing,
search time, and review. If you have been classified as a Category II requester, you will be charged
only for duplication after the first 100 pages. If you have been classified as a Category III requester,
we will waive fees for the first 100 pages of duplication and first two hours of search time. You will,
however, be responsible for additional search and duplication charges. We will notify you of any
charges. Please call the FOIA staff at the number above, if you have any questions regarding your
FOIA request.

Sincerely,

Janet Ingersoll/Nina Argent
Freedom of Information Act Staff
Division of Regulatory Affairs, OMS

**Fee Schedule**

| | |
|---|---|
| Duplication: | $.10 per page |
| Search/Review: | |
| GS-1 through GS-8: | $23.00 per hour |
| GS-9 through GS-14: | $46.00 per hour |
| GS-15 or above: | $83.00 per hour |
| Computer Cost: | Hourly rates as for search/review. |
| Certification: | $10 per certification |

**Exhibit E**



ALEXA KOLBI-MOLINAS
*STAFF ATTORNEY*
T/212.519.7845
akolbi-molinas@aclu.org

March 3, 2010

Assistant Secretary for Public Affairs
U.S. Department of Health and Human Services
5600 Fishers Lane, Room 17-66
Rockville, Maryland, 20857

**Re: Freedom of Information Act Appeal, Request #10-033**

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
*PRESIDENT*

ANTHONY D. ROMERO
*EXECUTIVE DIRECTOR*

To Whom It May Concern:

Requester American Civil Liberties Union ("ACLU") writes to appeal the determination by the Indian Health Services ("IHS") to deny the ACLU's requests for news media requester status in connection with two Freedom of Information Act ("FOIA") requests submitted to IHS on November 24, 2009. The ACLU also writes to appeal the agency's constructive denial of these requests.

**ACLU Requests**

On November 24, 2009, the ACLU submitted a FOIA request to the FOIA Office at IHS Headquarters in Rockland, M.D., via certified mail. This request ("Request A"), which was received on November 27, 2009, sought information related to plans to include a Birthing Unit at the new Eagle Butte medical facility currently under construction on the Cheyenne River Sioux Reservation. *See* Ex. A (Nov. 24, 2009 FOIA Request Re: Eagle Butte).

On November 24, 2009 the ACLU also submitted a FOIA request to the IHS Regional Office in Aberdeen, S.D., via certified mail. This request ("Request B"), which was received on November 30, 2009, sought information related to IHS' reimbursement policies regarding labor and delivery services at St. Mary's Healthcare Center, in Pierre, S.D, as well as policies related to treatment of ectopic pregnancies and miscarriages at that same facility. *See* Ex. B (Nov. 24, 2009 FOIA Request Re: St. Mary's Healthcare Center). On December 16, 2009, the ACLU received a letter from Ted Troseth, FOIA Coordinator at the IHS Regional Office in

Aberdeen stating that he had forwarded Request B to IHS Headquarters in Rockville, M.D. *see* Ex. C  Although the ACLU has no way of tracking the letter forwarded by Mr. Troseth, it was presumably received before February 17, 2010.

<u>IHS Response and Constructive Denial</u>
<u>of ACLU Requests</u>

In a letter to the ACLU dated February 17, 2010, IHS stated that it was "acknowledging" the ACLU's "request" within the twenty-calendar day time period set forth in 45 C.F.R. § 5.35.  *See* Ex. D (Feb. 17, 2009 IHS Response Letter).  It was not clear from the letter whether IHS was acknowledging receipt of both requests.  The letter also appeared to deny the ACLU's requests for a limitation of fees as a media requester by classifying the ACLU as an "other" requester instead. *See id.*[1]  The letter did not clarify the status of either request, nor did the letter explain the reasons for the denial of the fee limitation, or identify the official to whom the ACLU could appeal this decision. *See* 45 C.F.R. § 5.35.

45 C.F.R. § 5.35 does not, as the letter suggests, provide the agency with a timeline within which to "acknowledge" a FOIA request.  Instead, the plain text of that provision provides a timeline within which an agency must *decide* a FOIA request. *See* 45. C.F.R. § 5.35(b)(1).[2]  Where an agency fails

---

[1] The letter omitted any reference to the ACLU's requests for a waiver or reduction of duplication fees. *See* Ex. A at 2-3; Ex. B at 3-4.

[2] While this provision also allows the agency, in "unusual circumstances," to extend the deadline for responding to a request for up to ten additional days, the agency must notify a requester of any such extension in writing. 45 C.F.R. § 5.35(c).  According to IHS FOIA regulations, unusual circumstances include situations when the agency must:

(1) Search for and collect records from field facilities, archives, or locations other than the office processing the request;
(2) Search for, collect, or examine a great many records in response to a single request;
(3) Consult with another office or agency that has substantial interest in the determination of the request;
(4) Conduct negotiations with submitters and requesters of information to determine the nature and extent of non-disclosable proprietary materials.

*Id.* To date, the ACLU has not received written notification from IHS regarding unusual circumstances that would delay the resolution of either of its requests.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

to meet this deadline, a request is deemed constructively denied. *See* 45 C.F.R. § 5.35(a). At this time, a requester is also deemed to have constructively exhausted the administrative appeals process and is entitled to seek immediate judicial review of the agency's non-response. *See* 5 U.S.C. § 552(a)(6)(C) ("Any person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph"); 45 C.F.R. § 5.35(a).

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

IHS received Request A more than eighty days ago. And, although the agency has failed to acknowledge the date it received Request B, which was forwarded from the IHS Regional Office in Aberdeen, S.D., on December 16, 2009, it is extremely doubtful that that request was not received until after January 28, 2010 (twenty days before the agency sent its letter). As such, the constructive denial and exhaustion requirements should be deemed met.[3]

Notwithstanding the above, in an attempt to resolve these requests without recourse to litigation, the ACLU hereby appeals the agency's denial of media requester status and constructive denial of the ACLU's requests. *See* 45 C.F.R. § 5.34(a).

### News Media Requester Status

A waiver of search and review fees is warranted because the ACLU is a "representative of the news media" and the records requested are not sought for commercial use. 45 C.F.R. § 5.41(b); 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see* Ex. A at 2-3, Ex. B at 3-4. Notably, other federal agencies have determined that the ACLU is a representative of the news media with respect to other FOIA requests. *See* Ex. E (March 2009

---

[3] The agency's late response cannot revive the administrative appeals requirement. *See Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 64 (D.C. Cir. 1990) (holding that if an agency responds, even if late, before the plaintiff files suit, the administrative exhaustion requirement is revived). In *Thomas v. Dep't of Health and Human Services*, 587 Supp.2d 114, 117-118 (D.D.C. 2008), the District Court for the District of Columbia held that a letter that failed to state an agency's decision to comply or not comply with a request; failed to explain the reasons for its decisions, including decisions regarding a fee waiver; and failed to notify the requester of his or her right to appeal and to identify an official to whom the requester may appeal, could not cure the constructive denial of a request. This is plainly the situation here. *See* Ex. C.